UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEREMY CLAWSON,

                        **Plaintiff,**

  vs.                                                   1:20-CV-1449
                                                           (MAD/CFH)

**THE CITY OF ALBANY DEPARTMENT OF
FIRE AND EMERGENCY**, *a department of the CITY
OF ALBANY also known as Albany Fire Department*,

                        **Defendant.**
_____

APPEARANCES:                                OF COUNSEL:

**LAW OFFICE OF PATRICK SORSBY**      **PATRICK SORSBY, ESQ.**
1568 Central Avenue, 1st Floor
Albany, New York 12205
Attorneys for Plaintiff

**THE REHFUSS LAW FIRM, P.C.**           **ABIGAIL W. REHFUSS, ESQ.**
40 British American Blvd.                         **STEPHEN J. REHFUSS, ESQ.**
Latham, New York 12110
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      On November 24, 2020, Plaintiff Jeremy Clawson ("Plaintiff") commenced this action against Defendant the City of Albany Department of Fire and Emergency ("Defendant").[1] *See* Dkt. No. 1. On February 20, 2021, Plaintiff filed an amended complaint. *See* Dkt. No. 10. The amended complaint alleges three causes of action: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (2) disability discrimination in violation of New York

1

Human Rights Law ("NYSHRL") § 296; and (3) racial discrimination in violation of NYSHRL § 296 and Title VII of the Civil Rights Acts of 1964 ("Title VII"). *See* Dkt. No. 10 at ¶¶ 55-87. Additionally, Plaintiff requests that the Court apply NYSHRL § 296 as amended on October 11, 2019. *See id.* at ¶¶ 88-96.

Currently before the Court is Defendant's motion for summary judgment. *See* Dkt. No. 40. For the reasons set forth below, Defendant's motion is granted.

## II.  BACKGROUND

Plaintiff is a 51-year-old African American. *See* Dkt. No. 10 at ¶ 9. Plaintiff has been and remains employed by the Albany Fire Department since October 22, 1992. *See id.* at ¶ 10. In 2005, Plaintiff was promoted from a fire fighter position to the officer rank of lieutenant. *See* Dkt. No. 53-2 at ¶ 2. In 2010, Plaintiff was promoted to captain. *See id.*; Dkt. No. 47 at 1-2. On January 18, 2019, Plaintiff was offered a promotion to battalion chief. *See* Dkt. No. 10 at ¶ 21. Both parties understood that a promotion was not effective until an individual was sworn into a new position. *See* Dkt. No. 47 at 2.

Fire Department Policies include a "prohibition against conduct unbecoming" of a department member. *See* Dkt. No. 53-2 at ¶ 74. AFD members are also "obligated to self-report the commission of a possible crime." *See id.* at ¶ 56.

On January 31, 2019, at 10:00 p.m., Plaintiff, "while off duty," went to more than one business, and drank multiple drinks over the course of three to four hours. Dkt. No. 47 at 2-3; *see* Dkt. No. 40-2 at ¶¶ 4-5; Dkt. No. 53-2 at ¶ 6. At approximately 5:00 a.m., the Albany Police Department ("APD") received a call about "a person exposing himself" in a Dunkin Donuts. Dkt. No. 47 at 3. According to Defendant, at 5:10 a.m. police arrived at the scene. *See* Dkt. No. 53-2

---

[1] Plaintiff received a right to sue letter from the Equal Employment Opportunity Commission on

at ¶ 14. At this point Plaintiff was outside of the Dunkin Donuts, with his "pants pulled down" and wearing "boxer shorts." Dkt. No. 47 at 3-4. Defendant states that Plaintiff was "covered in feces" when he was discovered. Dkt. No. 40-2 at ¶ 12. Plaintiff argues that "the video does not show [he] was 'covered' in feces" and denies being "covered" in feces. Dkt. No. 47 at 3-4. APD officers called emergency medical services. *See id.* at 4. An ambulance took Plaintiff to Albany Medical Center at approximately 5:45 a.m. on February 1, 2019. *See id.*; Dkt. No. 15 at ¶ 17. Plaintiff left the hospital at around 10:00 a.m. *See* Dkt. No. 47 at 4.

Later that day, Battalion Chief Newton found out about Plaintiff's incident from that morning. *See id.* at 4-5. "Chief Gregory reviewed the CAD (computer aided dispatch) from the night before and called Deputy Chief Brian Hogan of APD and asked him to review the body camera footage from the night of the incident," *id.* at 5, and following review, Hogan "reported to Chief Gregory that it was Plaintiff that was observed on the body camera footage." *Id.* EMS and APD responders indicated that they believed Plaintiff had been drinking. *See id.* at 6.

Additionally, "[o]n February 1, 2019, Chief Gregory called Corporation Counsel, Peachie Jones, and had a meeting with Mayor Sheehan to advise them that it was his recommendation that the Plaintiff's offer of promotion be rescinded because of conduct unbecoming of a high-ranking position in AFD as a result of the incident at Dunkin Donuts earlier that morning." *Id.*

On February 3, 2019, Plaintiff was called to meet with AFD command staff, including Chief Gregory, Chief Toomey, Chief Wickham, and Chief Walker, and two union representatives. *See id.* at 7. Without Plaintiff's knowledge, Police Lieutenant Anthony Battuello was in Chief Gregory's office, adjacent to the meeting room, by request of Chief Gregory. *See id.* at 7-8.

---

August 27, 2020. *See* Dkt. No. 10-1.

During the meeting, Plaintiff was allowed to speak about the situation, and was then told that his promotion offer was rescinded. *See id.* at 8. Chief Gregory also offered Plaintiff information about the Employee Assistance Program ("EAP"), which is "offered by the City of Albany to all employees for various reasons including financial assistance, psychological counseling, substance abuse issues or even if you just need someone to talk to." *Id.* at 8-9.

On February 3, 2019, as directed, Plaintiff submitted an intra-departmental correspondence explaining this situation and stated it "appeared" he drank too much alcohol and became intoxicated. *Id.* at 10-11. Chief Gregory claims the rescission of promotion was because the conduct was "unbecoming of a high-ranking member of the AFD," *id.* at 13, in a "supervisory position where he would be a shift commander in charge of … more than 48 members of the department." Dkt. No. 53-2 at ¶ 68.

Plaintiff remains a Captain at AFD and has not been demoted or received a change in compensation from the Captain terms he enjoyed prior to the incident underlying this complaint. *See* Dkt. No. 47 at 14. Five months after the rescission of promotion, Plaintiff was offered to apply for a Deputy Chief position, a higher position than Battalion Chief, which Plaintiff declined to do because that position did not offer civil service protection. *See id.*

On August 10, 2022, Defendant moved for summary judgment. *See* Dkt. No. 40. On August 31, 2022, Plaintiff filed an opposition to Defendant's motion. *See* Dkt. No. 48. Defendant argues that Plaintiff was not discriminated against based on a perceived disability of alcoholism, *see* Dkt No. 40-3 at 2-9, Plaintiff was not discriminated against based on his race, *see id.* at 9-12, and that Plaintiff's claims under NYSHRL should be analyzed by the standard that applied prior to the law's October 2019 amendment. *See id.* at 12-13.

### III. DISCUSSION

**A.     Standard of Review**

4

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477

U.S. at 252 (emphasis and alterations in original)).  "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'"  *Id.* (quotations omitted).

**B.     Disability Discrimination**

The ADA prohibits "discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

> Disability discrimination claims typically are subject to the *McDonnell-Douglas* burden-shifting analysis, meaning, that when a Plaintiff makes a *prima facie* case of discrimination, the employer then 'must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext.

*Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 717 (S.D.N.Y. 2020) (quoting *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009)).

To make out a *prima facie* case of disability discrimination, the plaintiff must demonstrate that

> (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability.

*Kinneary v. City of New York*, 601 F.3d 151, 156 (2d Cir. 2010) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).  "The elements of a *prima facie* case for discrimination prohibited by the NYSHRL are the same as a claim under the ADA[.]"  *Starr v.*

*Time Warner, Inc.*, No. 07-cv-5871, 2007 WL 4144627, *6 (S.D.N.Y. Nov. 21, 2007) (citation omitted).

### 1. Prima Facie Case

#### a. Regarded As Having a Disability

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "The mere presence of a medical condition does not establish that a plaintiff is disabled." *O'Donnell v. King B 100, LLC*, No. 14-CV-1345, 2016 WL 7742779, *9 (N.D.N.Y. May 3, 2016) (citations omitted).

Under the ADA,

> an individual is 'regarded as having such an impairment' if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity. Prohibited actions include but are not limited to refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment.

29 C.F.R. § 1630.2(l)(1); ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 (2008). "An individual cannot be regarded as disabled under the ADA where the impairment is transitory and minor." *Id.* at § 12102(3)(B). A transitory impairment is defined as "'an

7

impairment with an actual or expected duration of [six] months or less.'" *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (quoting 42 U.S.C. § 12102(3)(B)).

However, "[e]stablishing that an individual is 'regarded as having such an impairment' does not, by itself, establish liability.  Liability is established under title I of the ADA only when an individual proves that a covered entity discriminated on the basis of disability … ." *Risco v. McHugh,* 868 F. Supp. 2d 75, 109 (S.D.N.Y.2012) (citing 29 C.F.R. § 1630.2(l)(3)).  "'[O]n the basis of' in the ADA requires a but-for causation standard." *Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019).  "'[B]ut-for' causation does not require proof that [discrimination] was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the [discriminatory] motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

Plaintiff argues that Defendant rescinded his promotion because of perceived alcoholism, and there remains an "issue of fact regarding whether [Plaintiff was] regarded as an alcoholic." Dkt. No. 48 at 29-30.  In reply to the motion for summary judgment, Plaintiff supports his contention that Defendant regarded him as an alcoholic based on three types of facts: (1) being offered information regarding the Employee Assistance Program ("EAP"), *see id.* at 29; (2) statements by the president of the union; and (3) statements by Chief Gregory.  *See* Dkt. No. 47 at 11.  Defendant argues that Plaintiff is not disabled and was never perceived to have the alleged disability of alcoholism.  *See* Dkt. No. 40-3 at 2.

Plaintiff claims that EAP, though offered to City employees for many reasons, was only offered to him because Defendant's employees perceived him as an alcoholic.  In support, Plaintiff cites that "AFD president Mengel testified that in his capacity as union president he had no recollection of Chief offering EAP at the meetings he was at before Mr. Clawson's February

3rd meeting." Dkt. No. 48 at 29. Mr. Mengel also stated, "I believe we discussed alcohol, but I don't know if anyone ever referred to it as a problem." Dkt. No. 44-2 at 80. Mr. Mengel further stated that he could not remember with certainty whether EAP was discussed at the meeting with Plaintiff. *See id.* at 41-42. Additionally, Mr. Mengel did not remember with certainty whether EAP had previously been offered to other members in a disciplinary meeting. *See id.* at 38-39. Defendant argues EAP was not offered because of a perception of alcoholism. Defendant argues that "even assuming that Plaintiff's incident with alcohol did have any sort of bearing on the EAP offer, this does not necessarily mean that he was perceived to be an alcoholic." Dkt. No. 53 at 12. Per Plaintiff's own admission, during the disciplinary meeting, "[Chief Gregory] did not use specific words saying alcoholism or a suspicion of alcoholism," Dkt. No. 44-1 at 58, and that no one in command staff "in words or substance" said or accused him of alcoholism. *See id.* at 61-62, 74.

"[T]he 'regarded as' definition of disability does not apply to impairments that are both 'transitory and minor,'" *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 606 (E.D.N.Y. 2013) (quoting 42 U.S.C. § 12102(3)(B)), "which the statute defines as impairments with 'an actual or expected duration of 6 months or less.'" *Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 263 (E.D.N.Y. 2015) (quoting 42 U.S.C. § 12102(3)(B)). Even if he was regarded as "having a problem with alcohol," that does not sufficiently allege disability under the ADA, as it does not allege that this was more than "transitory or minor." As such, rescinding a promotion based on one public night of intoxication does not require a finding that an employer was on notice of a disability or regarded someone as having a disability.

Defendant's maintenance of Plaintiff as an employee supports an inference that Defendant perceived Plaintiff of at most having a transitory impairment. Additionally, Defendant's offer to

9

Plaintiff to apply for a higher-ranking position five months after the incident, *see* Dkt. No. 47 at 14, also implies the belief this was at most regarded as a transitory impairment. *See id.*

Further, "alcoholics are not exempt from reasonable rules of conduct and that an employer need not tolerate an alcoholic's misconduct." *Woolcott v. E.I. DuPont de Nemours & Company, Inc.,* No. 95-CV-0721, 1997 WL 251475, *4 (W.D.N.Y. Apr. 29, 1997) (citations omitted). Therefore, violations of departmental policies may be disciplined even if they were caused by the disability of alcoholism. Accordingly, Plaintiff fails to make a *prima facie* case of disability discrimination under the ADA. As such, Defendant's motion for summary judgment as to the claim under the ADA is granted.

### 2. NYSHRL

Even utilizing the post-2019 amendment version of NYSHRL, which were enacted to conform with NYCHRL's more liberal pleading standard, *Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, *5 n.4 (S.D.N.Y. Aug. 29, 2019), "a plaintiff must still plausibly allege that he was treated less well 'at least in part '*because* of [his] [belonging to a protected class].'" *Weekes v. JetBlue Airways Corp.*, No. 21-CV-1965, 2022 WL 4291371, *7 (E.D.N.Y. Sept. 16, 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)) (internal quotation omitted). Drawing all reasonable inferences in Plaintiff's favor, Plaintiff at most alleged that Defendant regarded Plaintiff as having a minute and passing issue with alcohol, rather than a disability. As such, Plaintiff's claim for disability discrimination under NYSHRL is dismissed.

### C.     Racial Discrimination

"Title VII provides that it is 'an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or

10

privileges of employment because of such individual's race, color, religion, sex, or natural origin.'" *Meritor Sav. Bank, FSB*, 477 U.S. 57, 63 (1986) (quoting 42 U.S.C. § 2000e–3(a)). Discrimination claims under Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first make a *prima facie* case of discrimination by showing that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). "Claims under Title VII and the NYSHRL 'are generally treated as 'analytically identical,' and addressed together.'" *Bautista v. PR Gramercy Square Condominium*, No. 21-CV-11093, 2022 WL 17156628, *6 (S.D.N.Y. Nov. 22, 2022) (citing *Farmer v. Shake Shack Enter., LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019))).

"Once an employee makes a *prima facie* case of [discrimination], the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). If the employer can provide such a reason, "the burden shifts back to the plaintiff to show that the employer's explanation is a pretext for race discrimination." *Id.* To rebut the articulated justification for the adverse action, "the plaintiff must show 'both that the reason was false, and that discrimination was the real reason.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4 (1993) (internal quotations omitted). "'[T]he plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not

based in whole or in part on discrimination.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quotation and citation omitted).

Here, Defendant argues Plaintiff fails to satisfy the second, third and fourth prongs of his *prima facie* case of racial discrimination. *See* Dkt. No. 40-3 at 13-16. Defendant also asserts a legitimate non-discriminatory reason for rescinding the offer of promotion. *See id.* at 12. Plaintiff alleges that Defendant discriminated against him because Plaintiff is African American. *See* Dkt. No. 10 at ¶ 9.

### 1. Prima Facie Case

#### a. Qualified for Position

Here, neither party contends that Plaintiff did not or does not perform his duties as captain satisfactorily or that he is not qualified for captain responsibilities. Rather, it is unclear whether because of the incident Plaintiff was not qualified to perform his essential functions of the offered promotion position of battalion chief. Defendant claims that Plaintiff's offer of promotion was rescinded because of conduct unbecoming of a department member in a supervisory position. *See* Dkt. No. 40-3 at 5-6. Defendant argues that "[b]attalion chiefs are responsible for coordinating, commanding and supervising fire suppression and emergency response measures," and Plaintiff's "demonstrated lack of professionalism and judgment rendered him unqualified to fulfill the essential functions of the position." *Id.* However, five months later, Plaintiff was offered to apply for a role more senior than battalion chief. *See id.* at 7. As such, there remain questions of fact, including whether Plaintiff was otherwise qualified for the role of battalion chief.

#### b. Adverse Employment Action

"An adverse employment action is a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (citations and

quotation marks omitted). "Material adversity is to be determined objectively, based on the reactions of a reasonable employee," and in context. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011).

Within the Second Circuit,

> [e]mployment actions that have been deemed sufficiently disadvantageous to constitute an adverse employment action include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." As these examples suggest, "[t]o be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."

*Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (internal citations omitted) (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). Here, Plaintiff did not receive changes to his current employment, or his conditions and privileges associated with employment. *See* Dkt. No. 47 at 14. Rather, he had an offer of promotion to an advanced position rescinded. This is a change of offer of terms and conditions of employment. As such, this rescission of promotion offer is an adverse employment action.

### c. Inference of Discrimination

A plaintiff can establish an inference of discrimination by "showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citations omitted). "To be similarly situated, Plaintiffs must show that they were similarly situated 'in all material respects' to the individuals with whom they seek to compare themselves." *Glenwright v. Xerox Corp.*, 832 F. Supp. 2d 268, 274 (W.D.N.Y. 2011) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

13

> An employee is similarly situated to co-employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir.2000). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.* In other words, the comparator must be similarly situated to the plaintiff "in all material respects." *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir. 1997).

*Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010), *superseded by statute on different grounds*. Additionally, "[a]n employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Abdul–Hakeem v. Parkinson*, 523 Fed. Appx. 19, 21 (2d Cir. 2013) (quoting *Ruiz*, 609 F.3d at 493-94). Generally, "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham*, 230 F.3d at 39 (citing *Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 684 (2d Cir. 1998)).

Plaintiff identifies Patrick Trippany as a similarly situated employee. Mr. Trippany, a Caucasian AFD officer, was arrested and charged with an Aggravated DWI in 2017. *See* Dkt. No. 47 at ¶ 58. Chief Gregory testified that he was not aware of the DWI until December 2021, while Mr. Trippany had been promoted from lieutenant to Captain on April 15, 2020. *See id*. at ¶¶ 59-60; Dkt. No. 52-3 at ¶¶ 56-58. Plaintiff alleges Chief Gregory and members of the command staff knew of Mr. Trippany's arrest prior to the promotion, while Defendant denies this knowledge. *See* Dkt. No. 52-3 at ¶ 58. In support of this allegation, Plaintiff suggests that a November 22, 2017, meeting was called where Mr. Trippany denied being arrested, at which Chief Gregory, then a deputy chief, was present. *See id.* at ¶¶ 52-62. Additionally, the arrest had been reported in local media. *See id.* Defendant argues that the local newspapers "were from Gloversville, NY (roughly an hour outside of Albany) and Montgomery, MA (roughly an hour

14

and a half outside of Albany)." *Id.* at ¶ 58.  However, Plaintiff does not explicitly claim that Chief Gregory knew, and Defendant denies Chief Gregory knew about the DWI.  Additionally, Defendant claims that "[i]n December 2021, the command staff learned for the first time that Mr. Trippany had in fact been arrested and promptly demoted him to firefighter." *See id.*

      Here, Plaintiff was offered a promotion from captain to battalion chief, whereas Mr. Trippany was promoted from lieutenant to captain.  Each of these positions are governed by the department's rules.  *See* Dkt. No. 53-2 at ¶ 74.  Additionally, the action that allegedly led to this rescission of promotion happened days before the promotion was to take effect, whereas Mr. Trippany's DWI occurred over a year before his promotion took effect.  Mr. Trippany was arrested for a DWI, whereas Plaintiff was not arrested.

      Additionally, Chief Gregory claims Plaintiff was not promoted because of "conduct unbecoming a member of the fire department."  *See* Dkt. No. 53-2 at ¶ 68.  Plaintiff argues that such departmental rule regarding "unbecoming conduct" applies to all departmental members. *See id.* at ¶ 74.  Mr. Trippany was later demoted because of his conduct and violation of department rules.  *See* Dkt. No. 53-3 at ¶¶ 10-11.

### 2. Legitimate Non-Discriminatory Reason

  Once the plaintiff presents a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Upon the defendant's articulation of a legitimate, non-discriminatory reason, "the burden shifts back to the plaintiff to show that the employer's explanation is a pretext for race discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).

Defendant proffers that Plaintiff's promotion offer was rescinded because of the legitimate, non-discriminatory reason that Plaintiff "displayed conduct unbecoming of a high-ranking member of the AFD." *See* Dkt. No. 40-3 at 12. Defendant argues that "[b]attalion chiefs are responsible for coordinating, commanding and supervising fire suppression and emergency response measures," and Plaintiff's "demonstrated lack of professionalism and judgment rendered him unqualified to fulfill the essential functions of the position." *Id.* at 5-6. In support of this position, Defendant has submitted the bodycam footage from the responding APD officer on February 1, 2019. Defendant has met its burden of demonstrating a legitimate, non-discriminatory reason.

### 3. Pretext

"[O]nce the [employer] has made a showing of a neutral reason for the complained of action, to defeat summary judgment ... the [employee's] admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the [employer's] employment decision was more likely than not based in whole or in part on discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "So-called but-for causation is not the test. It suffices instead to show that the motive to discriminate was *one of the employer's motives*, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). The Second Circuit stated that a plaintiff can establish pretext by

> [d]emonstrat[ing] weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason. … Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage. … However, a plaintiff may rely on evidence comprising her *prima facie* case, including temporal proximity, together with other evidence such as

16

>     inconsistent employer explanations, to defeat summary judgment at
>     that stage.

*Zann Kwan*, 737 F.3d 834, 846-47 (2013) (citations omitted).

In the present matter, Plaintiff's conclusory allegations are insufficient to rebut Defendant's legitimate, non-discriminatory reason for the adverse employment action. First, Plaintiff alleges that an inference of discrimination is evidenced by the fact that he was replaced by a Caucasian firefighter, Captain Kowalski. However, after Plaintiff, Captain Kowalski was next in line for promotion to Battalion Chief based on the results of the Civil Service exam. *See* Dkt. No. 40-2 at ¶ 73. Although Plaintiff speculates that Chief Gregory rescinded his promotion for the purposes of promoting a Caucasian, the assertion is based solely on conjecture and it fails to account for the fact that Captain Kowalski did not engage in the same unprofessional conduct. Moreover, Plaintiff does not contest Captain Kowalski's qualifications.

Plaintiff also argues that AFD's treatment of Mr. Trippany, an alleged similarly situated comparator, is evidence of disparate treatment. *See* Dkt. No. 48 at 18. However, Mr. Trippany was not similarly situated. The only similarity between Plaintiff and Mr. Trippany is that they were both employed by Defendant and they were both involved in an off-duty incident involving alcohol. Otherwise, Trippany held the position of Firefighter prior to his promotion, whereas Plaintiff held the position of Captain at all times. Their job duties were obviously not the same and not subject to the same performance standards. Moreover, at the time Mr. Trippany was promoted in 2017, AFD command staff were unaware of his DWI arrest. When Mr. Trippany was arrested by the APD in December 2021 for driving without a license, Chief Gregory then learned that he had been previously arrested for a DWI in Johnstown, and that his license had been either suspended or revoked. *See* Dkt. No. 53-3 at ¶¶ 6-9. Mr. Trippany was then served with a notice of discipline alleging that he had failed to advise the department of his prior arrest,

and that he failed to meet a requirement of a position with the AFD, *i.e.*, to have a valid driver's license. *See id.* at ¶ 10. Following disciplinary proceedings, Mr. Trippany was stripped of his position of Captain, suspended without pay until he could obtain a valid New York State driver's license and, upon his return to the AFD, his rank was that of firefighter. *See id.* at ¶ 11. Unlike Mr. Trippany, Plaintiff was not suspended and was not stripped of his current rank. If anything, Plaintiff was treated considerably more favorably than Mr. Trippany.

Although Plaintiff contends that AFD was aware of Mr. Trippany's arrest before his promotion, he provides no factual basis for this assertion other than to say that because it was reported in a newspaper, AFD must have known about it. However, the newspapers that reported on Trippany's arrest were not "local" papers, but instead from Gloversville, New York, roughly an hour outside of Albany, and Montgomery, Massachusetts, roughly an hour and a half outside of Albany. *See* Dkt. No. 53-2 at ¶ 58. There is no direct or circumstantial evidence showing that Defendant had any knowledge of Mr. Trippany's DWI arrest prior to his promotion.

Here, the undisputed facts demonstrate that, despite his race, Plaintiff was offered a promotion and subsequently offered a more senior promotion. The offered promotion was rescinded on February 3, only two days after Plaintiff displayed conduct egregiously unbecoming of himself and for a high-ranking AFD officer. The close proximity between Plaintiff's conduct and the rescinded promotion belies the alleged claim of racial discrimination.

In sum, ample and uncontroverted evidence establishes that Plaintiff's promotion was rescinded because of his conduct on the night of January 31, 2019, and that his race played no role in the decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (stating that summary judgment may be granted "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted

independent evidence that no discrimination had occurred"). Stated another way, the promotion was rescinded after Plaintiff became so intoxicated in public that he defecated on his pants and had to be brought to a local hospital for observation by the APD.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 40) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: March 9, 2023
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge